UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

COREEN SIMMONS,

           *Plaintiff*,

        v.

DEPARTMENT OF VETERANS AFFAIRS
810 Vermont Ave, NW
Washington, DC 20420; and

ROBERT L. WILKIE, in his official capacity as
Secretary of the Department of Veterans Affairs,
810 Vermont Ave, NW
Washington, DC 20420,

           *Defendants*.

------------------------------------------------------------------------X

Civil Action No.
1:19-cv-7151

**COMPLAINT**

**PLAINTIFF DEMANDS
TRIAL BY JURY**

      Plaintiff COREEN SIMMONS ("Plaintiff"), by her attorneys, THE PAGLINAWAN FIRM, P.C., complaining of defendants DEPARTMENT OF VETERANS AFFAIRS and ROBERT L. WILKIE, in his official capacity as Secretary of the United States Department of Veterans Affairs ("Defendants"), alleges, upon information and belief, as follows:

**THE PARTIES**

      1.     At all times pertinent to this lawsuit, Plaintiff was employed as a registered professional nurse at the James S. Peters Veterans Administration Medical Center in the Bronx, New York, is Black, is female, and was 63 years old.

      2.     Defendant the Department of Veterans Affairs is a federal agency.

      3.     Defendant Robert Wilkie is sued in his official capacity as Secretary of the United States Department of Veterans Affairs.

**JURISDICTION AND VENUE**

      4.     This action is brought for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. Sections 2000e-17; Americans with Disabilities

Act of 1990, as codified, 42 U.S.C. Sections 12112 to 12117; and other pertinent pertinent

federal laws and laws of the State of New York and City of New York.

5.       The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

1343, as this action involves federal questions regarding the deprivation of Plaintiff's civil rights

under Title VII. The Court has supplemental jurisdiction over Plaintiff's related claims arising

under state and local law pursuant to 28 U.S.C. § 1367(a).

6.       Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to this action, including the unlawful

employment practices alleged herein, occurred in this district.

7.       On May 3, 2019, Plaintiff received the final agency determination from The

Department of Veterans Affairs, Office of Employment Discrimination Complaint Adjudication.

<u>STATEMENT OF FACTS</u>

8.       On March 17, 2017, Plaintiff asked her first line supervisor Rosemary Cancel-

Santiago, R.N. ("R.N. Santiago") for assistance with nursing staffing because the work was

backing up while another  registered nurse, Geraldine Brezler, R.N. (R.N. Brezler) was took a

leave under the Family Maternity Leave Act ("FMLA"). R.N. Santiago responded in an email by

stating that she was unable to recruit for a "position that is filled." R.N. Santiago neither

recruited nor hired a registered nurse to fulfill R.N. Brezler's duties while she was on FMLA

leave.  At that time, R.N. Brezler has been on and off FMLA leave for the past two to three

years, and each time she returned to work from her FMLA leave, she would return to her same

exact position that she had held prior to being out on FMLA leave. R.N. Brezler is Caucasian.

9.       At all pertinent times, Kathleen Capitulo, Ph.D. ("Dr. Capitulo"), Defendants' Chief

Nurse Executive and Associate Director for Patient Care Services, permitted Thureiyya

Rodriguez, R.N. ("R.N. Rodriguez") and Rosemary Magdangel, R.N. ("R.N. Magdangel") to

work four days a week -- as opposed to the usual five-days a week schedule. R.N. Magdangel

also was given telework privileges, that is, was allowed to work from home. Both R.N. Rodriguez and R.N. Magdangel were under Dr. Capitulo's supervision and held positions that required them to have face-to-face contact with patients and colleagues. Two other nurses assigned under Dr. Capitulo's supervision were also given telework privileges.

10.     On June 28, 2017, Defendants employed Plaintiff was a workers' compensation manager. That day, one of Defendants' employees, Daniel Vincent Barry ("Barry"), had a scheduled appointment with Plaintiff regarding his workers' compensation claim.  Barry arrived about 30 minutes early for his scheduled appointment time. Plaintiff told  Barry that she was assisting another claimant and that she would be ready to meet with him at his scheduled appointment time. Barry then screamed that "if I cannot see you now, I am going to HR [human resources] and I will be back to get you!" Plaintiff then went into her office and locked the door, fearing for her safety and life. Plaintiff's colleague, Omar Ortiz, subsequently told her that Barry had told him he was going to blow Ms. Simmons' head off and then blow his own head off. Plaintiff contacted the police, who told her that they didn't have the manpower to help Plaintiff. The police did not respond to her concerns until after three hours after Plaintiff's report, and even then, did not create a report related to the Barry's threat.

11.     The following day, on June 29, 2017, Plaintiff discussed Barry's threats with R.N. Santiago, who essentially ignored Plaintiff's fear for her safety. That same day, R.N. Brezler warned Plaintiff by stating "He [Barry] is becoming very aggressive; don't see him alone."

12.      On July 5, 2017, Plaintiff discussed Barry's threats with Scott Trump ("Trump"), Deputy Director of VA Police, also essentially ignored Plaintiff's fear for her safety. Trump, however, created a report related to Barry's threat. That was the first report created related to the Barry's threats.

13.     On July 5, 2017, Sandya Gumaste, M.D. ("Dr. Gumaste")  examined Plaintiff. Dr. Gumaste concluded that, as a result of Barry's threats, Plaintiff was suffering from post-traumatic stress disorder ("PTSD"), anxiety, and insomnia.

14.     On July 6, 2017, Plaintiff filed a workers' compensation claim based on workplace based on the emotional and physical injuries she sustained from Barr's threats, and used her annual leave and sick leave to take time off work.

15.     On July 7, 2017, Charles McDermott, M.D.  noted that Plaintiff was suffering from PTSD, anxiety, depression, and insomnia.

16.     On August 4, 2017, Plaintiff requested reasonable accommodation based on the on the emotional and physical disabilities she sustained from Barr's threats. Dr. Capitulo denied this request, stating that she was not eligible for telework.

17.     Plaintiff also requested leave under FMLA and was approved for FMLA leave for approximately six weeks, from August 22, 2017 to October 6, 2017.

18.     On September 22, 2017, while Plaintiff was taking her FMLA leave, R.N. Santiago started recruiting for an individual to replace Plaintiff as a workers' compensation program manager by, *inter alia*, posting an opening for the position at USAJobs.gov. R.N. Santiago did not inform Plaintiff that she was getting terminated as a workers' compensation program manager while she was taking her FMLA leave. In fact, Plaintiff did not find out about it until October 6, 2017 when she received a letter from Salvatore Tatta, who was then the Acting Associate Director at the VA.  The letter advised Plaintiff that she was terminated as as a workers' compensation program manager and notified her of new untitled position.

19.     Subsequently, Plaintiff started a new position with neither a title nor a description of duties and was in effect demoted from her previous position.

20.     On November 8, 2017, Plaintiff requested reasonable accommodation based on the on the emotional and physical disabilities she sustained from Barr's threats. Dr. Capitulo denied this request, stating that she was not eligible for telework.

21.     In October of 2017, Defendants removed Plaintiff from her Union to prevent her from obtaining representation.

**COUNT I:**
**Discrimination in Violation of Title VII of the**
**Civil Rights Act of 1964, 42 USC 2000e.** *et. seq.*

26.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as though set forth herein at length.

27.     Title VII created statutory rights against invidious discrimination and harassment based upon race, color, ethnicity, nationality, origin, sex, and age in terms and conditions of employment.

28.     Defendants subjected Ms. Simmons to invidious discrimination and harassment in her employment based on her race, color, ethnicity, nationality, origin, sex, age and gender in terms and conditions of employment.

29.     Defendants retaliated against Plaintiff when she filed discrimination and harassment complaints.

30.     The stated reasons for Defendants' conduct were not the true reasons, but instead were pretexts to hide Defendants' discriminatory animus.

31.     Defendants condoned the aforesaid discriminatory acts and practices, and as a result, Ms. Simmons has suffered, and will continue to suffer, substantial losses including loss of past earnings and other employment benefits, and has suffered monetary and compensatory damages for, *inter alia*, mental anguish, emotional distress and humiliation.

32.     Plaintiff has complied with all statutory prerequisites to filing this action.

33.     Defendants acted intentionally and with malice and reckless indifference to Ms. Simmons's rights under Title VII, and is, therefore, liable to Ms. Simmons for compensatory and other damages.

**COUNT II:**
**Discrimination in Violation of Age Discrimination in Employment Act**
**of 1967, as codified, 29 U.S.C. Sections 621 to 634.**

34.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as though set forth herein at length.

35.     Title VII created statutory rights against invidious discrimination and harassment based upon age in terms and conditions of employment.

36.     Defendants subjected Ms. Simmons to invidious discrimination and harassment in her employment based age in terms and conditions of employment.

37.     The stated reasons for Defendants' conduct were not the true reasons, but instead were pretexts to hide Defendants' discriminatory animus.

38.     Defendants condoned the aforesaid discriminatory acts and practices, and as a result, Ms. Simmons has suffered, and will continue to suffer, substantial losses including loss of past earnings and other employment benefits, and has suffered monetary and compensatory damages for, *inter alia*, mental anguish, emotional distress and humiliation.

39.     Plaintiff has complied with all statutory prerequisites to filing this action.

40.     Defendants acted intentionally and with malice and reckless indifference to Ms. Simmons's rights under the Age Discrimination in Employment Act, and is, therefore, liable to Ms. Simmons for compensatory and other damages.

**COUNT III:**
**Discrimination in Violation of New York State Human Rights Law**

41.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as though set forth herein at length.

42.     New York Human Rights Law, Executive Law section 296, *et. seq.*, ("New York Human Rights Law") created statutory rights against invidious discrimination and harassment based upon race, color, ethnicity, nationality, origin, sex, and age in terms and conditions of employment.

43.     Defendants subjected Ms. Simmons to invidious discrimination and harassment in her employment based on her race, color, ethnicity, nationality, origin, sex, and age in terms and conditions of employment.

44.     The stated reasons for Defendants' conduct were not the true reasons, but instead were pretext to hide Defendant's discriminatory animus.

45.     Defendants condoned the aforesaid discriminatory acts and practices, and as a result, Ms. Simmons has suffered, and will continue to suffer, substantial losses including loss of past earnings and other employment benefits, and has suffered monetary and compensatory damages for, *inter alia*, mental anguish, emotional distress and humiliation.

46.     Defendants acted intentionally and with malice and reckless indifference to Ms. Simmons's statutory rights under New York Human Rights Law, and are, therefore, liable to Ms. Simmons for compensatory and other damages.

**COUNT III:**
**Discrimination in Violation of New York City Human Rights Law**

47.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as though set forth herein at length.

48.     The Administrative Code of the City of New York section 8-107, *et. seq.* ("Administrative Code") created statutory rights against invidious discrimination and harassment based upon race, color, ethnicity, nationality, origin, sex, and age in terms and conditions of employment.

49.     Defendants subjected Plaintiff to invidious discrimination and harassment in her employment based on her race, color, ethnicity, nationality, origin, sex, and age in terms and conditions of employment.

50.     The stated reasons for Defendants' conduct were not the true reasons, but instead were pretexts to hide Defendants' discriminatory animus.

51.     Defendants condoned the aforesaid discriminatory acts and practices, and as a result, Ms. Simmons has suffered, and will continue to suffer, substantial losses including loss of past earnings and other employment benefits, and has suffered monetary and compensatory damages for, *inter alia*, mental anguish, emotional distress and humiliation.

**COUNT IV:**
**Discrimination in Violation of the Americans with Disabilities Act, as**
**codified, 42 U.S.C. Sections 12112 to 12117**

52.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as though set forth herein at length.

53.     The Americans with Disabilities Act. ("ADA") requires Defendants to make reasonable accomodation to the known physical and mental limitations of a qualified individual with a disability unless Defendants can show that accomodation would cause an undue hardship.

54.     Plaintiff was a qualified individual within the meaning of ADA.

55.     Defendants refused to provide Plaintiff with reasonable accommodation at least in two separate instances.

56.     The reasonable accommodation that Plaintiff requested would not cause undue hardship to Defendants.

57.     The stated reasons for Defendants' conduct were not the true reasons, but instead were pretexts to hide Defendants' discriminatory animus.

58.     Defendants condoned the aforesaid discriminatory acts and practices, and as a result, Ms. Simmons has suffered, and will continue to suffer, substantial losses including loss of

past earnings and other employment benefits, and has suffered monetary and compensatory damages for, *inter alia*, mental anguish, emotional distress and humiliation.

59.     Defendants acted intentionally and with malice and reckless indifference to Ms. Simmons's statutory rights under the ADA, and is, therefore, liable to Ms. Simmons for compensatory and other damages.

**Punitive Damages**

60.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as though set forth herein at length.

61.     Defendants' conduct towards Plaintiff and other non-Caucasian employees was intentional, malicious, and outrageous.

62.     Imposing punitive damages upon Defendants would serve to deter such intentional, malicious, and outrageous conduct and would benefit the public at large.

63.     By reason of the above, Plaintiff is entitled to punitive damages and attorney's fees.

**WHEREFORE**, Plaintiff requests that the Court award her:

(a)     The sum of $1,000,000 in compensatory damages suffered because of discrimination;

(b)     Front pay (including pay raises) until she reaches the age of 65 years old when Plaintiff would have retired from her job;

(c)     Costs and reasonable attorney's fees incurred with this lawsuit with interests thereon; and

(d)     Other damages and further relief as deemed just.

Dated:     Forest Hills, New York
           July 31, 2019

THE PAGLINAWAN FIRM, P.C.
*Attorneys for Plaintiff COREEN SIMMONS*
118-21 Queens Blvd., Suite. 501
Forest Hills, NY 11370
718-576-2544

BY: _____
James S. Paglinawan, Esq. (JP 1650)
EMAIL: jamesp@paglinawanfirm.com